UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
Civil Action No. 1:23-cv-00018-LLK

**AMBER S**                                                                                                            **PLAINTIFF**

**v.**

**KILOLO KIJAKAZI, Acting Commissioner of Social Security**                             **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint seeking judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner denying her claim for disability benefits under the Social Security Act. [Doc. 1]. Plaintiff's brief is at Doc. 16, the Commissioner's response in opposition is at Doc. 21, and Plaintiff's reply is at Doc. 22. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals. [Doc. 9].

Because Plaintiff's three arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Court will AFFIRM the Commissioner's final decision and DISMISS Plaintiff's complaint.

## The ALJ's decision

On January 20, 2022, the ALJ issued the Commissioner's final decision. [Administrative Record, Doc. 9-2 at 11-28]. The ALJ denied Plaintiff's claim, finding lack of disability from August 24, 2020, when Plaintiff alleges that she became disabled, through January 20, 2022, when the ALJ issued his decision.

The ALJ's decision was based on the five-step sequential evaluation process, which applies in all Social Security disability cases.

First, the ALJ found that Plaintiff has not engaged in substantial gainful activity since August 24, 2020, when Plaintiff alleges that she became disabled. *Id.* at 16.

Second, the ALJ found that Plaintiff has the following severe, or vocationally significant, physical and mental impairments:

> degenerative disc disease of the cervical spine with cervicalgia; thoracic and lumbar spine pain; right shoulder pain; carpal tunnel syndrome/bilateral hand pain; bilateral foot pain; cerebrovascular attack with right sided hemiparesis; hypertension; unspecified arthropathy, fibromyalgia, chronic pain syndrome; migraine headaches; slowed speech of undetermined etiology, unspecified speech disturbance; major depressive disorder; bipolar disorder; unspecified anxiety disorder/generalized anxiety disorder; conversion disorder; post-traumatic stress disorder (PTSD); unspecified neurocognitive disorder.

*Id.*

Third, the ALJ found that Plaintiff does not have an impairment that satisfies the medical criteria of any impairment listed in Appendix 1 of the regulations. *Id.* at 17.

As in any case that proceeds beyond Step 3, the ALJ determined Plaintiff's residual functional capacity (RFC), which is defined as the "most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ found that, notwithstanding her physical impairments, Plaintiff can:

> … perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently push and pull using the upper extremities; can occasionally push and pull using the lower extremities. She can occasionally climb stairs and ramps, but cannot climb ropes, ladders, and scaffolds. She can frequently balance; and can occasionally stoop, kneel, crouch, and crawl. She can frequently reach overhead; frequently handle, finger, and feel. She can express and exchange ideas by means of the spoken word adequately to impart information to others accurately and loudly, but not quickly. She cannot work outdoors. She must avoid concentrated exposure to temperature extremes, humidity, wetness, loud noise, pulmonary irritants, and vibration. She cannot work at unprotected heights or around hazards such as heavy equipment.

[Doc. 9-2 at 20]. The ALJ further found that, notwithstanding her mental impairments, Plaintiff can:

> … understand, remember, and carry out simple instructions and make simple work-related judgments. She can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision. She can perform simple work in an object focused environment. She can manage and tolerate simple changes in the workplace routine. She can adapt to the pressures of simple routine work; and can interact occasionally with supervisors and co-workers sufficiently for task completion in a nonpublic work setting.

*Id.*

Fourth, the ALJ found that Plaintiff is unable to perform any past relevant work. *Id.* at 26.

Fifth, the ALJ found that Plaintiff can perform a significant number of unskilled, light jobs in the national economy such as office helper, mail clerk, and router. *Id.* at 27.

**Legal Standards**

Because Plaintiff applied for disability benefits in September 2020 [Doc. 9-2 at 13], the new rules for weighing medical opinions apply. *See* 20 C.F.R. § 404.1520c ("For claims filed ... on or after March 27, 2017, the rules in this section apply."). Under the new rules, special evidentiary weight is no longer given to the opinion of a treating medical source. 20 C.F.R. § 404.1520c(a). In determining the persuasiveness of a medical opinion, an ALJ must consider "supportability, consistency, relationship [with the claimant], specialization, and other factors." 20 C.F.R. § 404.1520c(c)(1)-(5). But the ALJ need only explain how he/she considered the supportability and consistency factors, which are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. § 404.1520c(b)(2).

The task in reviewing the ALJ's findings is limited to determining whether they are supported by substantial evidence and made pursuant to proper legal standards. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is "more than a scintilla of evidence but less than a preponderance." *McGlothin v. Comm'r*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal quotation omitted). The Court may not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citation omitted).

The substantial-evidence standard presupposes that there is a "zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley v. Comm'r*, 581 F.3d 399, 405 (6th Cir. 2009). A reviewing court decides only whether substantial evidence supports the ALJ's decision. *Id.* If it does, the court affirms the decision even in the face of substantial evidence supporting the opposite conclusion. *Id.*

**Plaintiff's first argument is unpersuasive.**

Plaintiff's first argument pertains to the ALJ's weighing of the medical opinions with respect to her physical impairments. Plaintiff's second and third arguments pertain to the ALJ's weighing of the medical opinions pertaining to her mental impairments.

First, Plaintiff argues that:

> The ALJ's physical RFC is contrary to law primarily because he failed to properly evaluate the opinion evidence that unanimously contradicts his finding in accordance with SSA Policy and Sixth Circuit precedent.

[Doc. 16 at PageID.1313]. Apparently, the thrust of the argument is that, in light of the opinions of the Commissioner's own medical sources, the ALJ's finding that she can "frequently reach overhead; frequently handle, finger, and feel" [Doc. 9-2 at 20] is not supported by substantial evidence.

In January 2021, Plaintiff was examined at the request of the state agency by Jonelle E. Delawrence, M.D. [Doc. 9-7 at 678-84]. Based, in part, on information provided by Plaintiff, Dr. Delawrence's diagnostic impressions were:

1. Neck pain with previous diagnosis of bone spurs.
2. Hemiparesis with weakness in the right upper and lower extremities.
3. Right shoulder pain of undetermined etiology.
4. Migraine headaches.
5. Fibromyalgia.
6. Slow speech patter of undetermined etiology.

*Id.* at 681. In terms of work-related limitations, Dr. Delawrence opined, among other things, that Plaintiff:

> … would likely have difficulty lifting and carrying objects with her right hand or problems with repetitive motion, especially with her right hand. She appeared to be unable to lift her right arm above shoulder level, so would have difficulty with reaching above her head or lifting objects above her head, especially with her right arm.

*Id.* at 682.

The ALJ found the above limitations opined by Dr. Delawrence to be "not persuasive" because they were based on information provided by Plaintiff during a one-time examination, as opposed to a longitudinal relationship with Plaintiff, they were unsupported by observation during examination, and they were vague:

> [The opinion of Dr. Delawrence] was based on a one-time exam. As such, Dr. Delawrence does not have the longitudinal relationship with the claimant to assess her overall level of functioning. The opinion is not supported by her own exam, which showed the claimant had full range of motion of all joints except the right shoulder. Range of motion of the lumbar spine was normal. The claimant ambulated with a normal posture and gait. Muscle strength was 5/5 for the left extremities. (Ex. 4F/3-4). It is also not consistent with the rest of the record. On exams, motor

4

> strength and tone were normal. Sensory exam was intact. (Exs. 8F; 2F/1-2). Further, the opinion is vague, and is does not provide what level of limitation the claimant would have beyond stating she would have "difficulty."

[Doc. 9-2 at 25].

In March 2021, in connection with the state agency's initial decision, in light of Dr. Delawrence's opinions and other medical records, state agency program physician Robert Culbertson, M.D., opined, among other things, that Plaintiff can only "occasionally" use her right upper extremity to reach overhead, handle (grossly manipulate), and finger (finely manipulate). [Doc. 9-3 at 191]. In July 2021, in connection with the state agency's reconsideration decision, program physician Donna Farmer, M.D., adopted Dr. Culbertson's findings. *Id.* at 213-14.

The ALJ found the findings of Drs. Culbertson and Farmer to be "generally persuasive" but for their findings that would limit Plaintiff to only "occasional" overhead reaching, handling, and fingering [Doc. 9-2 at 24]. According to the ALJ:

> The record is more consistent with frequent (rather than occasional) overhead reaching. On other exams, the claimant had full range of motion of the bilateral upper extremities. (Ex. 5F/13-16). Motor strength was 5/5 throughout. Deep tendon reflexes were 2+ bilaterally. (Exs. 17F/15-16; 19F/18).

*Id.* The ALJ concluded that Plaintiff has an RFC to "frequently reach overhead; frequently handle, finger, and feel." *Id.* at 20.

The ALJ acted within his "zone of choice," *Blakley*, when he rejected as "vague" Dr. Delawrence's opinion that Plaintiff "would likely have difficulty" using her right upper extremity for repetitive motion and for lifting objects overhead. Dr. Delawrence's opinion did not identify the level of limitation beyond stating there would be "difficulty." Additionally, the ALJ acted within his "zone of choice" when he rejected the findings of Drs. Culbertson and Farmer that Plaintiff can only "occasionally" use her right upper extremity to reach overhead, handle, and finger as derivative of Dr. Delawrence's vague and unsupported opinion.

**Plaintiff's second argument is unpersuasive.**

Second, Plaintiff argues that:

> The ALJ's mental RFC is itself, ironically, improperly ambiguous, given his unwarranted claim that the consultative psychological examiner's assessment is vague.

[Doc. 16 at PageID.1313]. Apparently, the thrust of the argument is that the ALJ erred in preferring the opinions of the Commissioner's program psychologists to those of the Commissioner's one-time examining source.

In April 2021, Plaintiff was examined by one-time consultant Ed Easton-Hogg, Psy.D. [Doc. 9-7 at 810-14]. Based on examination and information provided by Plaintiff, Dr. Easton-Hogg's diagnostic impressions were:

> Major Depressive Disorder, Recurrent, Moderate Victim of Sexual and Physical Abuse as a Child, Unspecified NeuroCognitive Disorder

[Doc. 9-7 at 813]. In terms of work-related limitations, Dr. Easton-Hogg opined that:

> 1. The claimant's capacity to understand and remember instructions towards the performance of simple tasks appears affected by symptoms to a moderate degree.
>
> 2. Ability to sustain concentration and have persistence to carry out simple instructions appears affected by these impairments to a marked degree.
>
> 3. Capacity to respond appropriately to supervisors, coworkers and the public appears affected by these impairments to a moderate degree.
>
> 4. Ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a marked degree.

*Id.*

The ALJ found the above limitations opined by Dr. Easton-Hogg to be "not persuasive" because they lacked support of observation during examination:

> … not supported by Dr. Easton-Hogg's exam which noted the claimant repeated a four numbers forwards and three backwards. Eye contact was appropriate. Attitude was cooperative. Thought process was logical. Capacity for abstraction was intact. (Ex. 10F/2-3). The opinion is also not consistent with the normal mental status examinations in the record. On mental status exams, the claimant was alert and oriented in all spheres. Speech and behavior were normal. Thought content was normal. (Exs. 11F/8; 14F/7; 15F/1; 19F/17). Finally, the terms "moderate" and "marked" are vague, and not in vocationally specific language that would be relevant in assessing the claimant's ability to perform work related activity.

[Doc. 9-2 at 25].

In April 2021, in connection with the state agency's initial decision, in light of Dr. Easton-Hogg's findings and other medical records, state agency program psychologist Tonya Gonzalez, Psy.D., opined, among other things, that Plaintiff can:

> A) Understand and remember simple instructions;
>
> B) Sustain attention for extended periods of two hour segments for simple tasks;
>
> C) Tolerate occasional (not more than 1/3 of the time) contact with coworkers, supervisors, and the public;
>
> D) Adapt to gradual, infrequent changes as needed within the above parameters.

[Doc. 9-3 at 194]. In July 2021, in connection with the state agency's reconsideration decision, program psychologist Dan K. Vandivier, Ph.D., adopted Dr. Gonzalez's findings. *Id.* at 215.

The ALJ found the findings of Drs. Gonzalez and Vandivier to be "persuasive." [Doc. 9-2 at 25]. The ALJ concluded that Plaintiff has an RFC to:

> … understand, remember, and carry out simple instructions and make simple work-related judgments. She can maintain adequate attention and concentration to perform simple tasks on a sustained basis with normal supervision. She can perform simple work in an object focused environment. She can manage and tolerate simple changes in the workplace routine. She can adapt to the pressures of simple routine work; and can interact occasionally with supervisors and co-workers sufficiently for task completion in a nonpublic work setting.

[Doc. 9-2 at 20].

The new rules for weighing medical opinions eliminated the general preference for treating source opinions and for examining over non-examining source opinions, 20 C.F.R. § 404.1520c(a), and are generally regarded as less plaintiff favorable. But, even under the old rules, because Dr. Easton-Hogg was a one-time examining (as opposed to a treating) source, his opinion would not have been entitled to controlling weight, and the ALJ would not have been required to give particularly "good reasons" for the weight given to that opinion. *See* 20 C.F.R. § 404.1527(c)(2). Further, under the old rules, an ALJ could properly prefer the opinions of the Commissioner's non-examining program psychologists if they provide "more detailed and comprehensive information" or are "more consistent … with the record as a whole."

*Brooks v. Comm'r*, 531 F. App'x 636, 642 (6th Cir. 2013).  Under both old and new rules, in preferring the opinions of Drs. Gonzalez and Vandivier to Dr. Easton-Hogg's opinion, the ALJ acted within his "zone of choice."  *Blakley v. Comm'r*, 581 F.3d 399, 405 (6th Cir. 2009).

### Plaintiff's third argument is unpersuasive.

Third, Plaintiff makes an argument based on the opinion of her treating psychiatric mental health nurse practitioner (PMHNP), Kimberly Gambino.  [Doc. 16 at PageID.1333-34].

In November 2021 (after the state agency program psychologists had given their opinions), apparently at Plaintiff's request, Nurse Gambino completed the Mental Impairment Questionnaire in support of Plaintiff's disability claim.  [Doc. 9-12 at 1087-90].  Nurse Gambino rated Plaintiff as "extremely" limited in three of nine areas of mental functioning relevant to ability to sustain work-like activities (understand information, interact with others, and concentrate), "markedly" limited in five areas (remember information, apply information, persist, maintain pace, and management oneself in the workplace), and "moderately" limited in one area (adapt in the workplace).  *Id.* at 1088.  Nurse Gambino further opined that Plaintiff's mental impairments would be expected to result in absences from work "more than four days per month."  *Id.* at 1089.  The Questionnaire did not ask Nurse Gambino to identify findings or observations supporting these opinions.  *Id.* at 1088-89.  It is undisputed that these opinions of Nurse Gambino, if accepted, would render Plaintiff disabled.

The ALJ found Nurse Gambino's disabling opinions to be "not persuasive" because they were given on a mere checkbox form, they were vague, and they were unsupported:

> … The opinion is not supported; Ms. Gambino merely checked off boxes on a form rather than provide an explanation for the limitations given. The terms "marked" and "extreme" are vague and not in vocationally specific language that would be relevant in assessing the claimant's ability to perform work related activities. It is also not consistent with the rest of the record. On mental status exams, the claimant was alert and oriented in all spheres. (Exs. 11F/8; 19F/17; 14F/7; 15F/1). Speech and behavior were normal. Thought content was normal. The claimant recalled 3/3 words after five minutes. (Exs. 11F/8; 14F/7; 15F/1; 19F/17).

[Doc. 9-2 at 26].

Plaintiff argues that the ALJ erred in discounting Nurse Gambino's disabling opinions. [Doc. 16 at PageID.1333-34]. The argument is unpersuasive because an ALJ may "properly give little weight" to findings on a "check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings." *Ellars v. Comm'r*, 647 F. App'x 563, 566 (6th Cir. 2016).

**Order**

Because Plaintiff's three arguments are unpersuasive and the Administrative Law Judge's (ALJ's) decision is supported by substantial evidence, the Commissioner's final decision is hereby AFFIRMED, and Plaintiff's complaint is DISMISSED.

November 20, 2023

Lanny King, Magistrate Judge
United States District Court